Lawbehce, J.
The indictment is as follows: “ The Grand Jury of the County of Chenango, by this indictment, accuse Whit Y. McHugh of the crime of Misappropriation and Falsification of Accounts by a Public Officer, a felony, committed as follows: The said Whit Y. McHugh, of the Town of Afton, in the County of Chenango and State of New York, in and during the years 1940 and 1944, at the Town of Afton, in the county and state aforesaid, he being then and there a public officer, to wit, the duly elected, qualified and acting supervisor of the county of Chenango, in and for the Town of Afton, in the county and state aforesaid, and as such supervisor of the Town of Afton, in the county and state aforesaid, then and there receiving and having in Ms possession, custody and control certain moneys, goods, chattels and personal property of the said Towú of Afton aforesaid, the true owner thereof, to wit, the sum of $546.14 in money, lawful money of the United States, of a kind and denomination to the grand jury aforesaid unknown, such money having been received by the said Whit Y. McHugh, as such supervisor as aforesaid, for and on behalf and on account of the said Town of Afton aforesaid, with intent to defraud, did then and there feloniously, wrongfully, willfully, knowingly and criminally, appropriate the said sum of $546.14 to his own use, without authority of law, he the said Whit Y. McHugh not being entitled thereto, and said Whit Y. McHugh did knowingly keep a false account and make false entries and erasures in his supervisor’s cash book, *137 and did fraudulently alter and falsify said cash book account, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.”
The evidence dealt with defendant’s receipt of funds as supervisor, represented by checks, entries of items in books kept by him, and expenditures of such moneys. The testimony on behalf of the People attempted to show violations of section 1865 of the Penal Law, which section was not mentioned by name.
An auditor from the State Department of Audit and Control made an examination of defendant’s books, covering the ■ period from January 1, 1939, to June 2, 1945. The People’s evidence dealt largely with transactions relating to thirteen checks received by the defendant as supervisor, which may be dealt with separately, and because of the claim that the other exhibits are very important, they may also be considered separately to some extent. For example, an examination of People’s Exhibit 1 shows that a check for the sum of $109.44 was posted in defendant’s cashbook as the sum of $84.44 but deposited in defendant’s bank account as supervisor for the correct amount of $109.44.
It appears that the State auditor, in his investigation covering the period from January 1,1939, to June 2,1945, discovered the thirteen checks which had been incorrectly entered in the cashbooks and for sums less than the amounts for which they were written. The difference would seem to amount to $364.62, erroneously stated by the auditor to be $366.34. It also appears that each of the thirteen checks was deposited in defendant’s bank account as supervisor at or about the date of its receipt and in the full amount for which it was drawn, so that none of the money represented by the checks failed to be accounted for. The district attorney conceded that all these checks were deposited. It is clear that, so far as these thirteen checks are concerned, there could be no misappropriation nor any intent to defraud. The most that could be claimed is that mistakes were made in posting the amounts of these checks in the cashbook and that therefore the defendant’s cashbook did not properly reflect those transactions. People’s Exhibits 14 and 15 are the cashbooks kept by the defendant.
People’s Exhibit 16 is a check in the sum of $84.75, entered in the cashbook under date of June 5, 1943, at the sum of $74.75, or a difference of $10.. However, it was deposited in *138 the bank account of the defendant as supervisor in the sura of $84.75.
The difference between the amount of these checks as posted in the cashbook and as deposited is the sum of $374.62, erroneously stated by the auditor to be $376.34. This difference may represent a part of the $546.14 charged in the indictment as misappropriated.
People’s Exhibit 17, received in evidence, is a report and receipt from B. P. Buckley in the amount of $3.50, entered in the cashbook as $3 under date of September 8, 1943. People’s Exhibit 17a, received in evidence, is a report of Paul Brown. The amount stated in the report is $35 and the amount posted in the cashbook, under date of September 8, 1943, is $25. There is no evidence that this sum was deposited. People’s Exhibit 17b, received in evidence, is another report of Paul Brown. The amount stated in the report is $30. It was posted in the cashbook for the sum of $20 under date of November 10, 1943.
People’s Exhibit 18 shows claims for salary and salaries paid from December, 1943, to the end of the year 1944. It would appear from the testimony of the auditor that there were fourteen such salary, checks and thirteen claims, and that the exhibit shows the salary of the defendant for each month. This exhibit, as testified to by the auditor, showed a claim for the salary of the defendant and two salary checks for the month of January, 1944, less the withholding tax. These checks were indorsed by the defendant. The defendant stated to the auditor, after an examination of the books, that he must have taken his salary twice for the same month. This salary item was refunded to the town before any arrest.
People’s Exhibit 19 is a check referred to as the Crowley check. The check is dated December 1, 1944, and was made by the Crowley Milk Company to the order of the defendant. It was for the sum of $70.87. The defendant was the first indorser. The second indorsement reads “ Pay to the order of the Chenango County National Bank and Trust Company of Norwich, New York, Blue Bird Bestaurant, Ernest Taranto.” This check was not deposited by the defendant. There were two checks for the same amount of $70.87. One was referred to as the Crowley check and the other as the Whitson check. The Crowley check was entered in the cashbook but was not deposited. The Whitson check was deposited but was not entered in the cashbook. There is no evidence to prove that they were for the same item.
*139 People’s Exhibit 20 is a bank statement, covering the period from January 1, 1939, to June 2, 1945. The total of the deposits during such period was $217,370.99. For the same period the amounts listed in the cashbook totalled $217,817.13, showing an excess in the cashbook of $446.14. This apparently did not include the extra salary check of $100.
It does not clearly appear whether the amount represented by the cashbook entries was made up of items as originally made or as modified by changes claimed to have been made. The defendant testified that he put all checks received in a drawer or in a safe which had no combination; that he put all money in the bank which he knew of; that he tried to balance the books and had difficulty; that some figures were changed in an attempt to secure a balance; that there was no attempt or intent to defraud; that he took an extra salary check for one month by mistake and first learned of that when told of it by the auditor; that he co-operated with the auditor and told him he would make good any shortage-found; that he had paid back all shortages claimed and that he took the auditor’s statement as to the amount of such shortage so that the town could not be prejudiced. This may well be interpreted, under the circumstances, as a statement of honest effort to correct mistakes. The testimony of the defendant is to that effect.
The defendant’s wife did some work on the books after 1941, and found no changed figures. The defendant was ill for some period during that time.
■ The difference ’ between the deposits and the cashbook for the year 1943, as stated by the auditor, is $155. It does not appear which was larger.
Defendant produced six witnesses who testified to his good character. These included a farmer, an insurance man, a retired businessman and a clergyman.
Section 29 of the Town Law requires a supervisor to keep an accurate and complete account of his receipts and disbursements. It is apparent that the defendant failed to do this.
After the close of the main charge and when requests were being considered, the court, referring to changes in the books, said, “ I say this, rubbers on pencils and ink eradicator have no place in making mistakes.” This may have conveyed to the jury the idea that neither a pencil nor eradicator could be used to correct mistakes except with criminal intent.
When the jury came into court and announced their verdict it was “ Guilty of falsification of entries in the books, not *140 guilty of .intent to defraud.” This may well be interpreted as a finding of honest mistakes. No- explanation or amplification was sought. The jury was sent back, with instructions to bring in a verdict of guilty or not guilty on any one of the subdivisions of section 1865, with the added statement, “ However, I assume that you wish to make some recommendation, and if you wish to make that recommendation, you can do so. The Court will not be bound by it. I am going to ask that you retire and reconsider your verdict. You may reconsider it entirely. You may find him guilty or not guilty. * * * Do I make myself plain? You may make any recommendation you wish to make, if you wish to make any, in case you find him guilty. If you find him not guilty, that ends it.” An exception was taken by the attorney for the defendant. This statement by the court was practically a suggestion to the jury to bring in a verdict of guilty, which is just what the jury did, coupling it with a recommendation of leniency.
The evidence would not justify a verdict of guilty under subdivision 1 of section 1865. The district attorney concedes that there was no larceny. The jury found that the defendant was not guilty under subdivisions 3 and 4 of section 1865. The evidence regarding a violation of subdivision 2 of section 1865 ‘ ‘ Knowingly keeps any false account, or makes any false entry or erasure in any account of, or relating to, any money so received by him,” falls short of what is necessary to convict for a felony. The term, knowingly, under the circumstances here, imports something more than carelessness. It signifies guilty knowledge or evil or fraudulent intent, as charged iii the indictment.
The testimony does not sustain the conviction. The judgment should be reversed and the indictment dismissed.